## JOHN C. WINSTON CO. v. FEDERAL TRADE COMMISSION.

(Circuit Court of Appeals, Third Circuit. February, 27, 1925.)

No. 3223.

**1. Trade-marks and trade-names and unfair competition ⊗⇒80½, New, vol. 8A Key-No. Series—Order of Trade Commission to cease practice which had been abandoned before complaint unauthorized.**

Complaint by Federal Trade Commission to compel a respondent to cease a practice which respondent had on advice of counsel abandoned, and offered to stipulate it would never do again, cannot be sustained.

**2. Trade-marks and trade-names and unfair competition ⊗⇒68—Method of selling encyclopedia, together with encyclopedic and research services, held not unfair competition.**

In proceedings before Federal Trade Commission, under Act Sept. 26, 1914 (Comp. St. §§ 8836a–8836k), sale of set of encyclopedias, together with an encyclopedic cumulative loose-leaf service and research service, by subscription blank, on which price was written in red ink, rather than printed, *held* insufficient to constitute unfair competition, as a representation that price to be paid was for the two services, and that purchaser was to receive volumes of encyclopdia free.

Petition for Review of an Order of the Federal Trade Commission.

The Federal Trade Commission filed complaint, charging the John C. Winston Company with unfair practices in respect to methods of sale. On petition of respondent to review order of the Trade Commission requiring it to cease and desist from the practices complained of, it appeals. Order vacated.

Joseph J. Brown and Henry P. Brown, both of Philadelphia, Pa., for appellant.

Edwin H. Cassels, of Chicago, Ill., amicus curiæ.

Edward E. Reardon, of Washington, D. C., and W. H. Fuller, of McAlester, Okl., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The John C. Winston Company, respondent in proceedings instituted by the Federal Trade Commission, brings here for review an order of the Commission commanding it to cease and desist from trade practices which it found to be unfair and therefore unlawful methods of competition. Act of September 26, 1914, 38 Stat. 717, 719, 720 (Comp. St. § 8836a–8836k). All findings by the Commission are based on a stipulation of facts

entered into by the parties. As the facts are not in dispute we are concerned only with their inferences.

Before the Commission filed the complaint, the Winston Company, a publishing concern, was putting on the market a work entitled "Winston's Cumulative Loose-Leaf Encyclopedia in Ten Volumes." The loose-leaf arrangement was adopted so that the books could be supplemented from time to time by additional leaves supplied by loose-leaf services going with the sale of the books. One service was called "Winston's Cumulative Loose-Leaf Annual Service," intended to supply encyclopedic information for a period of ten years; and the other was known as "International Bureau of Research Service," intended to supply for the same period information in response to questions propounded by subscribers. There was nothing unfair about these trade offerings. The trouble arose in the method of their sale. This, briefly, was as follows:

The company furnished its salesmen with printed subscription blanks which described the loose leaf encyclopedia and the two loose leaf services and stated by printed figures the price of the first to be $55 and the price of the two services, together, to be $49, and the price of all $104. At the top of the subscription blank the words "Special Contract" were written in red ink, and in red ink the supposed regular prices of $55 and $49 and the total of $104 were stricken out and the figures $49 written in at the bottom, thus indicating to one who contemplated subscribing that he would get the three things for the price of two; or, in other words, he would get the two services at the regular price and the ten volumes of the encyclopedia free.

Contemporaneously with the furnishing of these blanks to its salesmen, the company caused to be inserted in the Review of Reviews an advertisement purporting to show that the price of the encyclopedia with the ten year revision service was $104 when, as a matter of admitted fact, the price of the books with the two services was never higher than $49. (There is another subscription blank in question, but as it differs in no material respect from the one we have described it will not be necessary to refer to it.)

When the Federal Trade Commission inquired into its practices the company consulted counsel who gave it the sound advice to stop this method of sale. This it did at once; and it did it in evident good faith. Later, however, the company adopt-

ed another method which consisted of furnishing its salesmen with subscription blanks containing substantially the same wording as the former but omitting the printed prices. The price of $49 for all three things—books and services—was written in red ink, indicating, perhaps, a special price, but the Commission thought it indicated more, namely, that $49 was the price of the two services and that a person subscribing for them would get the ten volumes of the encyclopedia free. On this belief the Commission filed a complaint against the company charging it with unfair practices in respect to both methods of sale, the one abandoned and the one substituted, and, after hearing, entered the order now on review, commanding the company to cease and desist from both practices.

[1] Whether the method of sale first pursued by the company and then abandoned on the suggestion of the Commission was an unfair method of competition is a question which, in the circumstances, is more academic than real and therefore is one on which we do not feel called upon to express an opinion. It will be enough to say that the evidence shows that the company itself had ceased and desisted from the practice before the Commission filed the complaint, and on this evidence the order of the Commission to cease and desist from doing what the company had already ceased and desisted from doing—and what it offered to stipulate never to do again—cannot be sustained.

[2] The second method of sale—the one pursued at the time of the hearing before the Commission—is very different from the first, both in character and in its probable effect upon the purchasing public. In this one there is no deception in respect to an offer at a price below the figures of an advertised price. True, the price was written in the blank and so might make an unthinking subscriber believe that he was being favored. Yet it would be going rather far to require vendors of wares, in order to avoid the appearance, or to avoid the fact, of unfair competition in commerce, to conduct their dealing with vendees in printed figures.

The main vice of the offending blank, as the Commission sees it, is the charge of $49 for the encyclopedic and research services and the absence of any charge specifically for the encyclopedia. The Commission says this induces the buyer to think that he is getting the books free, or, in other words, that he is getting something for nothing. We have difficulty in following this reasoning for certainly the buyer knows he is getting three things for one price—$49. Moreover, that is the only price named in the blank, and it is named immediately after a' descriptive statement of the encyclopedia and the services. He also knows that each costs money to supply and that in each, or in the three taken together, there is a profit to the vendor; and, similarly, he thinks that the three have a value to him, otherwise he would not buy them.

Whether in a transaction of this kind the profit of the vendor is large or the value to the vendee is small are matters with which, in the absence of fraud, the Commission, we surmise, would not concern itself. The sole question is whether hidden in the transaction there is an inducement, based on an untruth, that the purchaser is getting ten volumes of the encyclopedia for nothing. This is difficult to believe when, obviously, he knows that the encyclopedia is the principal thing to which, of necessity, the services are merely incidental. It is conceivable that a very stupid person might be misled by this method of selling books, yet measured by ordinary standards of trade and by ordinary standards of the intelligence of traders, we cannot discover that it amounts to an unfair method of competition within the sense of the law.

The order of the Commission is vacated.